[Cite as *State v. Mason*, 2026-Ohio-2039.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-05-035 |
| vs. | : | OPINION AND JUDGMENT ENTRY 6/1/2026 |
| NICOLE D. MASON, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CR39977

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.

**O P I N I O N**

**BYRNE, J.**

{¶ 1} Nicole Mason appeals from the decision of the Warren County Court of Common Pleas, General Division, which sentenced Mason to nine months in prison for drug-related crimes. For the reasons discussed below, we affirm the trial court's decision.

## I. Factual and Procedural Background

{¶ 2}   In 2022, Mason participated in a missing juvenile investigation. During the investigation, police found .10 grams of a Phencyclidine and fentanyl mixture, .10 grams of fentanyl, and a syringe in Mason's purse. As a result, a Warren County grand jury indicted Mason on four counts as described below:

| Counts | Offense | Revised Code Sections | Offense Level |
|--------|---------|----------------------|---------------|
| 1 | Aggravated Possession of Drugs | R.C. 2925.11(A), R.C. 2925.11(C)(1)(a) | F5 |
| 2 | Possession of Fentanyl-Related Compound | R.C. 2925.11(A), R.C. 2925.11(C)(11)(a) | F5 |
| 3 | Possessing Drug Abuse Instruments | R.C. 2925.12(A), R.C. 2925.12(C) | M1 |
| 4 | Illegal Use or Possession of Drug Paraphernalia | R.C. 2925.14(C)(1), R.C. 2925.14(F)(1) | M4 |

{¶ 3}   Initially, Mason pleaded not guilty on all counts. But later, Mason filed a motion for intervention in lieu of conviction ("ILC") pursuant to R.C. 2951.041. "ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage was a factor leading to the offense." *State v. Massien*, 2010-Ohio-1864, ¶ 9, citing R.C. 2951.041(A)(1). In her motion, Mason asserted that drug or alcohol use was a factor leading to her offenses. On the same day, the trial court ordered an ILC assessment.

{¶ 4}   Mason posted $5,000 through a bail bondsman. The trial court scheduled Mason's ILC hearing, but Mason did not appear at the ILC hearing. As a result, the trial court revoked Mason's bond and issued a capias for her arrest. The trial court rescheduled Mason's ILC hearing and held ten additional hearings from April 2023 to

August 2024.[1] Mason failed to appear at all these hearings. At one of the hearings, the bondsman indicated that he could not locate Mason.

{¶ 5}   Finally, in August 2024, the trial court ordered forfeiture of Mason's bond and stated in an entry that Mason was unavailable for trial.

{¶ 6}   Later, after two years of being at large, police located and arrested Mason at a Kroger after medics and police were called because she was under the influence and falling asleep. The trial court then held a status hearing. At that status hearing, Mason withdrew her not guilty plea and pleaded guilty to Counts One and Two of the indictment, which were felony offenses. In exchange, the state dismissed Counts Three and Four. The trial court engaged in a Crim. R.11(C) plea colloquy before accepting Mason's guilty plea.

{¶ 7}   During the hearing, the state requested the trial court sentence Mason to "at least twelve months in prison" because Mason had been "extremely frustrating" throughout the case because she was "ducking, hiding in backseats of cars" and "going to different locations" to avoid arrest. The state emphasized that prosecutors had to "show up for a bunch of bond forfeiture hearings" and "tr[ied] to check all the death records to see if [Mason] really was dead" after a member of her family told the prosecutor's office that Mason was dead. The state concluded that "community control [was] not going to be good" for Mason given these circumstances.

{¶ 8}   In response, Mason's defense counsel represented that Mason "acknowledge[d] that she ha[d] a problem" and that it was a "pretty significant problem."

---

1. The record reflects that the trial court scheduled the initial ILC hearing to be held on February 22, 2023, and rescheduled the ILC hearing to be held on April 20, 2023. Subsequently, the trial court scheduled 10 additional "hearings," to be held on May 11, 2023, June 22, 2023, July 10, 2023, August 11, 2023, August 21, 2023, October 6, 2023, December 11, 2023, February 13, 2024, April 29, 2024, and July 15, 2024. Mason failed to appear at all these hearings.

Mason's counsel also stated that "[Mason's] criminal history, especially between '21 and '22 was very bad."

{¶ 9} The trial court judge stated that Mason's case "ha[d] been a pain in the butt" but that he was "not holding that against [Mason] . . . as to [her] sentence." Instead, the judge stated that the court was going to "sentence [Mason] based on what [Mason] did in the case" and "what [Mason's] record [was]." The judge explained that he did not "believe in sending people to prison for possession of small amounts of drugs" and was willing to "put [Mason] on probation and order that [Mason] enter into and successfully complete a community based corrections facility." The judge stated that the community-based corrections facility was a four-to-six-month program, and upon completion of the program, Mason would begin probation.

{¶ 10} The judge also told Mason that if she wanted to accept a prison sentence, he would sentence her to nine months in prison but would give Mason credit for the 97 days she already served. He explained that there was "no drug treatment" in prison "so they just open the door and shove you out" after the prison sentence. The judge indicated that he did not like that path for Mason because he thought she "might not be the best candidate for probation." But the judge stated that it "would make [him] happy" if he "could get [Mason] into a four to six month drug program." He described the drug program as a "locked facility" that Mason could not leave before she completed the program. The judge also conveyed that if she violated probation, she could incur more jail time.

{¶ 11} The judge also explained that before Mason could begin the proposed drug program, Mason would have to get her other cases in other counties resolved, which would take three to four months. Mason responded that she would instead "take the prison sentence please." The court then sentenced Mason to two concurrent prison terms of nine months, with the possibility of discretionary postrelease control under R.C.

2967.28, and imposed court costs. The record reflects that before the judge sentenced Mason, he reviewed the ILC assessment as a presentence-investigative report.

{¶ 12} Mason appealed, raising two assignments of error.

## II. Law and Analysis

### A. Failure to Conduct an ILC Hearing

{¶ 13} Mason's first assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ADDRESS MASON'S ILC MOTION PRIOR TO ACCEPTING A PLEA.

{¶ 14} In support of her first assignment of error, Mason argues the trial court abused its discretion when it failed to hold an ILC hearing before she pleaded guilty. Mason argues that R.C. 2951.041 (the ILC statute) and language in an Ohio Supreme Court opinion, *State v. Massien*, 2010-Ohio-1864, ¶ 9, establish that when a trial court orders an ILC assessment, the court "should" not accept a guilty plea before holding an ILC hearing. Secondly, Mason cites the same principles and argues that her guilty plea was not knowing, intelligent, and voluntary because the trial court did not conduct an ILC hearing before she entered her guilty plea. We will address these arguments in turn.

### 1. Hearing Requirement and Invited Error

{¶ 15} The first issue before us is whether the trial court was required to hold an ILC hearing, and, if so, whether its failure to do so was an abuse of discretion requiring reversal.

{¶ 16} We begin with the text of the ILC statute, R.C. 2951.041. That statute provides that:

> If the court elects to consider an offender's request or the offender alleges that drug or alcohol usage by the offender was a factor leading to the criminal offense with which the offender is charged, the court *shall* conduct a hearing to determine whether the offender is eligible under this section

for intervention in lieu of conviction and *shall* stay all criminal proceedings pending the outcome of the hearing.

(Emphasis added.) R.C. 2951.041(A)(1). This language, which uses the word "shall," plainly provides that the duty to hold a hearing is mandatory "[i]f" either of two conditions are met. *See State ex rel. v. Fornshell*, 2025-Ohio-65, ¶ 19 (12th Dist.) ("[T]he word 'shall' is construed as mandatory, unless there appears a clear and unequivocal legislative intent that these words receive a construction other than their ordinary usage."). First, the statute requires the trial court to hold an ILC hearing "[i]f" the court "elects to consider an offender's request" for ILC. R.C. 2951.041(A)(1). Second, the statute requires the trial court to hold an ILC hearing "[i]f . . . the offender alleges that drug or alcohol usage by the offender was a factor leading to the criminal offense" charged. *Id.* Both conditions are met here because the court "elect[ed] to consider" Mason's ILC petition when it ordered an ILC assessment and scheduled an ILC hearing, and because Mason specifically alleged in her ILC motion that drug and alcohol use were factors leading to the charged offenses. As a result, the trial court was required by the statute to hold an ILC hearing. *Id.*

{¶ 17} The language in *Massien* that Mason cites mirrors this assessment. There, the Ohio Supreme Court stated:

> *If, after a hearing, the trial court determines that an offender is eligible for ILC, then it shall accept the offender's guilty plea,* place the offender under the general control and supervision of the appropriate probation or other qualified agency, and establish an intervention plan for the offender. R.C. 2951.041(C) and (D).

(Emphasis added.) *Massien* at ¶ 9. The supreme court made clear that a court shall accept a guilty plea only if it determines the offender is eligible for ILC "after a hearing." *Id.* This interpretation has been followed by other courts of appeals. *See State v. Cebula*, 2014-Ohio-3276, ¶ 17 (11th Dist.), citing R.C. 2951.041(A)(1) ("If the trial court 'considers' the ILC motion, the trial court must then hold a hearing to determine if the defendant is

eligible."); *State v. Branch*, 2013-Ohio-2350, ¶ 11 (2nd Dist.) ("If the court elects to consider an offender's request, the court must conduct a hearing to determine whether the offender is statutorily eligible for ILC and must stay all criminal proceedings pending the outcome of the hearing.").

{¶ 18} But suggesting, as Mason does, that the trial court here erred by failing to conduct an ILC hearing is too simplistic, and ignores the significance of Mason's actions as described in the record. While the record suggests that the trial court never *completed* an ILC hearing, it *scheduled* two ILC hearings and subsequently held ten additional hearings, in which the trial court could have addressed and presumedly intended to address Mason's ILC request. It was not the fault of the trial court that none of these ILC hearings were completed, but Mason's fault, because Mason failed to appear for all 12 scheduled hearings. This failure of Mason's is critical and also results in her argument being barred by the invited-error doctrine. "[U]nder the invited-error doctrine, 'a party is not entitled to take advantage of an error that [she] [herself] invited or induced the trial court to make.'" *State v. Baker*, 2022-Ohio-3271, ¶ 19 (12th Dist.), quoting *State v. Schuler*, 2019-Ohio-1585, ¶ 42 (12th Dist.). Even if the trial court erred when it failed to complete an ILC hearing before accepting Mason's guilty plea, Mason induced the trial court's error when she failed to attend the 12 hearings the trial court scheduled and appears to have at least attempted to commence each time scheduled.

{¶ 19} Moreover, two years following her initial ILC request, at the status hearing she did finally attend, Mason failed to assert that she wanted to continue with her ILC petition before entering into her guilty plea. And when presented with the choice of attending a rehabilitation center or going to prison, Mason *chose* prison. Notably, the legislature's rational in enacting ILC was to "'. . . treat the cause rather than punish the crime.'" *State v. Birch*, 2012-Ohio-543, ¶ 28 (12th Dist.), quoting *State v. Flanagan*, 2003-

Ohio-1444, ¶ 7 (12th Dist.). When given a chance, Mason denied the opportunity to treat the cause of her crimes at a rehabilitation center and instead chose the punishment of prison.

{¶ 20} Therefore, even if the trial court erred when it did not complete an ILC hearing (an issue we do not reach), Mason invited that error and could not benefit from it when she did not appear at 12 scheduled hearings and failed to mention ILC and instead elected a prison sentence when she did finally appear before the court. *Lester* at 93. Thus, Mason invited and induced the trial court's error, if any.

**2. Knowing, Intelligent, and Voluntary Plea**

{¶ 21} Mason, again relying on R.C. 2951.041(A)(1) and *Massien*, argues that her guilty plea was not knowing, intelligent, or voluntary because the trial court failed to rule on her pending ILC motion. Moreover, she argues that the trial court's "failure to indicate to Mason the reasons that the trial court may have overruled [her ILC motion] prior to accepting her plea renders her plea involuntary."

{¶ 22} Mason's argument that her guilty plea is invalid is meritless because the record demonstrates that her guilty plea was entered into knowingly, intelligently, and voluntarily. "'Crim.R. 11(C) prescribes the procedure a trial court must follow in felony cases before accepting a guilty or no contest plea.'" *State v. Bowling*, 2025-Ohio-2272, ¶ 20 (12th Dist.), quoting *State v. Martin*, 2019-Ohio-2792, ¶ 26 (12th Dist.). "The rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Bowling* at ¶ 20, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). "This requires the trial court to notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c)." *Bowling* at ¶ 20, citing *State v. Oliver*, 2012-Ohio-2543, ¶ 41 (12th Dist.). "This also requires the trial court to make the

necessary determinations and give the defendant the necessary warnings set forth in Crim.R. 11(C)(2)(a) and (b)." *Bowling* at ¶ 20, citing *Oliver* at ¶ 41.

{¶ 23} Generally, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Dangler*, 2020-Ohio-2765, ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). The two exceptions to this rule are (1) when the trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty, and (2) a trial court's complete failure to comply with a portion of Crim.R. 11(C). *Id.* at ¶ 14-15.

{¶ 24} The record establishes that the trial court judge complied with Crim.R. 11(C), by explaining to Mason her constitutional rights set forth in Crim.R. 11(C)(2)(c) at the status hearing. Nor does Mason identify any failure with respect to Crim.R. 11(C)(2)(a) and (b). Even if the trial court erred in not completing an ILC hearing, this procedural error does not affect the validity of the guilty plea Mason entered under Crim.R. 11(C). Furthermore, the plain language of the ILC statute (R.C. 2951.041) and the language in *Massien* do not concern the validity of guilty pleas. *State v. Massien*, 2010-Ohio-1864, ¶ 9. Therefore, Mason's argument that her guilty plea was not knowing, intelligent, and voluntary is meritless.

{¶ 25} Accordingly, we overrule Mason's first assignment of error.

**B. Sentencing**

{¶ 26} Mason's second assignment error states:

MASON'S PRISON SENTENCE IS CONTRARY TO LAW.

{¶ 27} In support of her second assignment of error, Mason does not attack the validity of her conviction, but challenges the nine-month prison sentence imposed. She argues that the trial court failed to consider the principles and purposes of sentencing

found in R.C. 2929.11 and the sentencing factors found in R.C. 2929.12 when sentencing her to her prison because it "failed to indicate at the sentencing hearing that it considered" these principles, purposes, and factors. Mason also argues that the "record fails to support a prison sentence." In making this argument, she argues the court applied improper weight to certain facts or ignored other facts that she believes the court should have evaluated differently. Mason argues that based on a proper evaluation of the facts, the trial court should have sentenced her to community control rather than sentencing her to prison.[2]

### 1. Consideration of R.C. 2929.11 and R.C. 2929.12 Factors

{¶ 28} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Murphy*, 2025-Ohio-63, ¶ 13 (12th Dist.), citing *State v. Day*, 2021-Ohio-164, ¶ 6 (12th Dist.). As applicable here, R.C. 2953.08(G)(2) states:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14 or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is contrary to law.

{¶ 29} "R.C. 2929.11 and R.C. 2929.12 are not among the statutory provisions

---

2. To determine whether an appeal or argument raised on appeal is moot, we may look outside the record and take judicial notice of information about a prisoner's release from prison available on the "Offender Search" website of the Ohio Department of Rehabilitation and Corrections. *State v. Williams*, 2018-Ohio-3989, ¶ 12, fn.1; *see also Donald Sullivan, L.L.C. v. Reynolds*, 2026-Ohio-596, ¶ 8. While a search of that website reveals that Mason has been released from her nine-month prison term, we find the information available on that website and in the record insufficient to determine whether Mason is currently on discretionary postrelease control. Because it is possible that Mason remains on postrelease control, we decline to find that Mason's second assignment of error—which only concerns her already-completed prison sentence—is moot. *See State v. Roberts*, 2017-Ohio-481, ¶ 15 (2d Dist.) (appellant's challenge to prison sentence held not to be moot despite appellant having completed prison sentence because appellant was still serving postrelease control, which "subjects him to numerous conditions and consequences if he violates the conditions of his post-release control.").

listed in R.C. 2953.08(G)(2)(A)." *Murphy* at ¶ 14, citing *State v. McIntosh*, 2023-Ohio-4022, ¶ 50 (12th Dist.). "Therefore, R.C. 2953.08(G)(2) does not permit this court to modify or vacate a sentence based on a lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12." *Murphy* at ¶ 14. Instead, our review relating to R.C. 2929.11 and R.C. 2929.12 is limited to determining whether Mason has presented clear and convincing evidence that her sentence is "otherwise contrary to law" under R.C. 2952.08(G)(2)(b). *Id.* at ¶ 15, citing *State v. Iverson*, 2023-Ohio-1601, ¶ 40 (12th Dist.).

{¶ 30} "'A felony sentence is not clearly and convincingly contrary to law if the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible sentencing range.'" *State v. Clinger*, 2022-Ohio-3691, ¶ 39 (12th Dist.). "Although a court imposing a felony sentence must consider the purposes of felony sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12, 'neither R.C. 2929.11 nor R.C. 2929.12 requires [the] court to make any specific factual findings on the record.'" *State v. Bryant*, 2022-Ohio-1878, ¶ 20, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 20.

## 2. Analysis

{¶ 31} Upon reviewing the record, we note that the trial court specifically stated in its sentencing entry that it "considered the purposes and princip[les] of sentencing in R.C. 2929.11, the seriousness and recidivism factors in R.C. 2929.12, and all other relevant sentencing statutes" in sentencing Mason. Yet Mason argues that the trial court erred in when it failed "to indicate [*orally*] *at the sentencing hearing* that it considered the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12." (Emphasis added.) In other words, Mason argues the court's reference to its consideration of the

- 11 -

R.C. 2929.11 purposes and principles and the R.C. 2929.12 factors in its sentencing entry was insufficient, and that it was required to reference its consideration of these principles, purposes, and factors orally at the sentencing hearing.

{¶ 32} This argument lacks merit. We have consistently held that "[t]he fact that the trial court did not expressly cite to R.C. 2929.11 and 2929.12 during the sentencing hearing is immaterial" when the trial court "specifically cited to both statutes within its sentencing entry." *State v. Julious*, 2016-Ohio-4822, ¶ 11 (12th Dist.). Here, because the trial court mentioned in its sentencing entry that it considered the R.C. 2929.11 purposes and principles and the R.C. 2929.12 factors, Mason's argument fails.

{¶ 33} Lastly, Mason's argument that "the record fails to support a prison sentence," which she advances by making her own evaluation of the various sentencing factors in the record, is meritless. This is the case because "R.C. 2953.08(G)(2)(b) 'does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and R.C. 2929.12." *Bowling*, 2025-Ohio-2272, at ¶ 62 (12th Dist.), quoting *Jones* at ¶ 42; *see also Id.* ("'Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.'"). In other words, nothing in R.C. 2953.08(G)(2) permits an appellate court to conduct a "freestanding inquiry" into the sentencing factors such as Mason now urges us to undertake. *Jones*, 2020-Ohio-6729, at ¶ 42.

{¶ 34} Mason's sentence is not contrary to law. Mason's nine-month prison term was within the permissible range for her fifth-degree felony convictions. The trial court properly imposed discretionary postrelease control and court costs, and considered the principles and purposes of R.C. 2929.11 and the seriousness and recidivism factors under

R.C. 2929.12. See *Murphy*, 2025-Ohio-63, at ¶ 16 (12th Dist.). Thus, the trial court properly imposed Mason's sentence.

{¶ 35} Accordingly, we overrule Mason's second assignment or error.

### III. Conclusion

{¶ 36} For the above reasons, we overrule both of Mason's assignments of error.

{¶ 37} Judgment affirmed.


HENDRICKSON, P.J., and SIEBERT, JJ., concur.

---

# J U D G M E N T   E N T R Y


The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


*/s/ Robert A. Hendrickson, Presiding Judge*


*/s/ Matthew R. Byrne, Judge*


*/s/ Melena S. Siebert, Judge*